UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                       :

In re:                               :         Chapter 11
                                         :         Case No. 09-14398 (AJG)

CABRINI MEDICAL CENTER,        :
                                         :

                     Debtor.    :

                                         :
-------------------------------------------------------------x

### ORDER APPROVING SETTLEMENT OF CLAIMS BY AND BETWEEN THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CABRINI MEDICAL CENTER, CABRINI MEDICAL CENTER, MISSIONARY SISTERS OF THE SACRED HEART, ILLINOIS AND MISSIONARY SISTERS OF THE SACRED HEART, NEW YORK

              Upon the motion dated September 22, 2010 (the "**Motion**"), Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving Settlement of Claims by and Between the Official Committee of Unsecured Creditors of Cabrini Medical Center, Cabrini Medical Center, Missionary Sisters of the Sacred Heart, Illinois and Missionary Sisters of the Sacred Heart, New York (the "**Settlement Motion**")[1];  and notice of the Motion, having been given by first class regular mail to the United States Trustee, all creditors who have filed claims or have scheduled claims in this case, and any other party who has filed a notice of appearance, being good and sufficient notice; and East Nineteenth Street LLC ("**East Nineteenth Street**") and the **1199 Entities**[2] having each filed an objection to the Settlement Motion;  and the Settlement Motion having been considered at a hearing on November 3, 2010, and the Court having heard and considered the arguments of the Debtor and all other parties appearing who wanted to be heard;  and the Debtor, the Committee, the MSSH Entities, East Nineteenth Street and the 1199 Entities having agreed that the Settlement Motion should be granted with the following modifications;  and the Court having found and concluded that the

Debtor has established good and sufficient cause to grant such relief; it is

    **ORDERED** that the Settlement Motion is granted to the extent set forth herein; and it is further

    **ORDERED** that the Stipulation and Order attached hereto as <u>Exhibit A</u> is So Ordered and approved as modified herein; and it is further

    **ORDERED** that in exchange for the withdrawal of East Nineteenth Street's objection to the Settlement Motion, (a) East Nineteenth Street shall be paid $750,000 out of the settlement proceeds within five (5) business days after the entry of this order; (b) East Nineteenth Street shall be deemed to have an allowed general unsecured deficiency claim equal to the amount of its proof of claim filed in this case, less the $750,000 payment to be made pursuant to this Order and any amount paid to it on account of its secured claim pursuant to the order approving the Debtor's *Motion for an Order (i) Approving the Allocation and Disbursement of Proceeds from the Sale of the Debtor's Real Property and Related Assets to Creditors with Valid Liens, and (ii) Reclassifying as Unsecured the Claims of Other Secured Creditors* [Docket No. 424] (the "**Allocation Order**"), which has been submitted simultaneously herewith; and (c) proof of claim number 207 filed by Saint Vincent's Catholic Medical Centers of New York is hereby allowed as a general unsecured claim in the amount of $2,987,345.00; and it is further

    **ORDERED** that upon entry of this Order, East Nineteenth Street shall be deemed to have released the MSSH Entities and the Committee, their respective affiliates, agents, attorneys and any and all of their respective members (the "**East Nineteenth Street Released Parties**") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions and demands, whether in law, admiralty or

2

equity, which East Nineteenth Street, its successors and assigns ever had, now have or hereafter can, shall or may have against the East Nineteenth Street Released Parties, for, upon or by reason of the Debtor's chapter 11 proceeding and/or that certain intercreditor agreement, dated July 28, 2008, between East Nineteenth Street and the MSSH Entities (the "**Intercreditor Agreement**"), provided, however, nothing contained herein shall act as a release of (i) the payment due East Nineteenth Street pursuant to this Order; (ii) the payment due East Nineteenth Street pursuant to the Allocation Order; and (iii) East Nineteenth Street's general unsecured deficiency claim allowed pursuant to this Order; and it is further

ORDERED that upon entry of this Order, the MSSH Entities shall be deemed to have released East Nineteenth Street, its respective affiliates, agents, attorneys and any and all of its respective members (the "**MSSH Entities East Nineteenth Street Released Parties**") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions and demands, whether in law, admiralty or equity, which the MSSH Entities, their successors and assigns ever had, now have or hereafter can, shall or may have against the MSSH Entities East Nineteenth Street Released Parties, for, upon or by reason of the Debtor's chapter 11 proceeding and/or the Intercreditor Agreement, provided, however, nothing contained herein shall act as a release of (i) the payments due the MSSH Entities pursuant to this Order; and (ii) the payments due the MSSH Entities pursuant to the Allocation Order; and it is further

ORDERED that in exchange for the withdrawal of 1199 Entities' objection, the 1199 Entities shall be paid $100,000 out of the settlement proceeds within five business days after the entry of this order, the 1199 Entities shall have an allowed general unsecured claim in

the amount of $4,838,484.84, and the 1199 Entities hereby withdraw with prejudice proofs of claim 376, 377, 378, 401 and 403; and it is further

ORDERED that upon entry of this Order, the 1199 Entries shall be deemed to have released the MSSH Entities, their respective affiliates, agents, attorneys and any and all of their respective members (the "**1199 Entities Released Parties**") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions and demands, whether in law, admiralty or equity, which the 1199 Entities, its successors and assigns ever had, now have or hereafter can, shall or may have against the 1199 Entities Released Parties, for, upon or by reason of the Debtor's chapter 11 proceeding, provided, however, nothing contained herein shall act as a release of (i) the payment due the 1199 Entities pursuant to this Order; (ii) the payment due the 1199 Entities pursuant to the Allocation Order; and (iii) the 1199 Entities' general unsecured claim allowed pursuant to this Order in the amount of $4,838,484.84; and it is further

ORDERED that upon entry of this Order, the MSSH Entities shall de deemed to have released the 1199 Entities, their respective affiliates, agents, attorneys and any and all of their respective members (the "**MSSH Entities 1199 Entities Released Parties**") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions and demands, whether in law, admiralty or equity, which the MSSH Entities, their successors and assigns ever had, now have or hereafter can, shall or may have against the MSSH Entities 1199 Entities Released Parties, for, upon or by reason of the Debtor's chapter 11 proceeding, provided, however, nothing contained herein shall act as a

4

release of (i) the payments due the MSSH Entities pursuant to this Order; and (ii) the payments due the MSSH Entities pursuant to the Allocation Order; and it is further

**ORDERED** that the combined $850,000 to be paid to East Nineteenth Street and the 1199 Entities shall be allocated so that the MSSH Entities contribute $200,000 and the General Unsecured Creditors will contribute $650,000, and paragraph 2 of the Stipulation and Order is hereby amended to add "plus $850,000" to the definition of "**Available Settlement Cash**", paragraph 4(b) of the Stipulation and Order is hereby amended to delete "less $6,562,500 (the "**MSSH Subordinated Claim**")" and replace it with "less the total of $6,562,500 plus $200,000 (the "**MSSH Subordinated Claim**")," paragraph 5(b) of the Stipulation and Order is hereby amended to delete "less $6,562,500" and replace it with "less $6,762,500," and paragraph 8(a) of the Stipulation and Order is hereby amended to add "less $650,000" after the term "Available Settlement Cash."

Dated:      New York, New York
            November 19, 2010                          **/s Arthur J. Gonzalez**
                                                       Arthur J. Gonzalez
                                                       Chief United States Bankruptcy Judge

1   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Motion.

2   1199SEIU United Healthcare Workers East, 1199SEIU National Benefit Fund, 1199SEIU Health Care Employees Pension Fund, League, 199SEIU Training and Upgrading Fund, 1199SEIU/Employer Child Care Fund, and 1199SEIU/League Job Security Fund.

**ALSTON & BIRD LLP**
Martin G. Bunin
Karl Geercken
Tiffany A. Buxton
Catherine R. Fenoglio
90 Park Avenue
New York, NY 10016
(212) 210-9400

*Counsel for the Official Committee*
*of Unsecured Creditors*

**KLESTADT & WINTERS, LLP**
Tracy Klestadt
Sean Southard
Brendan M. Scott
292 Madison Avenue, 17th floor
New York, NY 10017
(212) 972-3000

*Counsel for Missionary Sisters of the*
*Sacred Heart, an Illinois not-for-profit*
*corporation, and Missionary Sisters*
*of the Sacred Heart, a New York*
*not-for-profit corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CABRINI MEDICAL CENTER, | : | Case No. 09-14398 (AJG) |
| | : | |
| Debtor. | : | |

-----------------------------------------------------x

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS OF | : | |
| CABRINI MEDICAL CENTER, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 09-01639 (AJG) |
| | : | |
| - against – | : | |
| | : | |
| MISSIONARY SISTERS OF THE | : | |
| SACRED HEART, ILLINOIS and | : | |
| MISSIONARY SISTERS OF THE | : | |
| SACRED HEART, NEW YORK, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------X

## STIPULATION AND ORDER

WHEREAS, Cabrini Medical Center (the "**Debtor**") commenced a case under chapter 11 of the Bankruptcy Code on July 9, 2009 (the "**Petition Date**");

WHEREAS, as of the Petition Date, Missionary Sisters of the Sacred Heart, an Illinois not-for-profit corporation ("**MSSH-ILL**") had secured claims against the Debtor in the amount of $30.033 million;

WHEREAS, as of the Petition Date, Missionary Sisters of the Sacred Heart, a New York not-for-profit corporation ("**MSSH-NY**"), had secured claims against the Debtor in the amount of $18.74 million;

WHEREAS, as of the Petition Date, MSSH-ILL and MSSH-NY (together, sometimes referred to as the "**MSSH Entities**"), had general unsecured claims against the Debtor in the amount of approximately $7.2 million;

WHEREAS, prior to the Petition Date, the MSSH Entities, as landlord, and the Debtor, as tenant, were parties to certain leases of residential real property, which residential real property the Debtor then subleased or licensed to certain individuals (the "**Residential Lease Relationships**");

WHEREAS, the Debtor intends to reject any unexpired Residential Lease Relationships in accordance with section 365 of the Bankruptcy Code;

WHEREAS, as of the Petition Date, the secured claims of the MSSH Entities were collateralized by mortgages on the portions of the improved real property of the Debtors known as Building "A", Building "B" and Building "C" (collectively, "**Buildings A, B and C**"), and by other property of the Debtor;

WHEREAS, on July 20, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") to serve in this chapter 11 case.

WHEREAS, on November 4, 2009, this Court entered an order approving the certain post-petition financing between the Debtor and MSSH-IL and use of cash collateral by the Debtor in accordance with certain terms negotiated with, inter alia, the MSSH Entities, including certain adequate protection in favor of the MSSH Entities (the "**Final DIP Order**");

WHEREAS, as part of the Final DIP Order, the Debtor agreed and acknowledged, *inter alia*, the validity, enforceability and priority of the liens and claims of the MSSH Entities against the Debtor and its prepetition property without counterclaim or offset of any kind and further acknowledged and agreed that the MSSH Entities claims and positions are not subject to any avoidance, disgorgement, recoupment or other action under Chapter 5 of the Bankruptcy Code nor any theory of equitable subordination or recharacterization ("**Debtor Acknowledgments**");

WHEREAS, as part of the Final DIP Order, the Debtor Acknowledgments were to become binding on all parties in interest unless specifically challenged by such parties in interest no later than October 28, 2009 (the "**Challenge Deadline**");

WHEREAS, on October 28, 2009, the Committee timely filed this adversary proceeding against MSSH-ILL and MSSH-NY;

WHEREAS, the Committee was the only party in interest to challenge the Debtor Acknowledgments prior to expiration of the Challenge Deadline;

WHEREAS, the complaint in this adversary proceeding alleges thirty causes of action which, among other things, seek to (i) recharacterize the secured and unsecured

claims of the MSSH Entities as contributions or grants, (ii) subordinate the secured and unsecured claims of the MSSH Entities to the claims of all the general unsecured creditors of the Debtor and transfer the related liens of the MSSH Entities, including their mortgages on Buildings A, B and C, to the Debtor's estate pursuant to section 510(c) of the Bankruptcy Code, (iii) set aside the mortgages of the MSSH Entities on Buildings A, B and C as fraudulent conveyances and transfers under the New York Debtor and Creditor Law and sections 548 and 544 of the Bankruptcy Code, and recover from the MSSH Entities the full value of the avoided transfers, and (iv) avoid preferential transfers made by the Debtor to the MSSH Entities pursuant to section 547 of the Bankruptcy Code and recover from the MSSH Entities the full value of the avoided transfers;

WHEREAS, pursuant to section 551 of the Bankruptcy Code, the liens with respect to any transfers avoided as fraudulent conveyances or transfers are preserved for the benefit of the Debtor's estate;

WHEREAS, on December 3, 2009, each of MSSH-ILL and MSSH-NY filed answers to the complaint;

WHEREAS, each answer denies the material allegations of the complaint and asserts 28 affirmative defenses to the causes of action alleged in the complaint, including, without limitation, that reasonably equivalent value was given and received in the alleged transactions in question and that the complaint fails to plead inequitable conduct on the part of the MSSH Entities in their dealings with the Debtor;

WHEREAS, the Committee and the MSSH Entities have engaged in discovery; and

WHEREAS, in order to avoid the costs and the risks of further litigation, the Committee, MSSH-ILL and MSSH-NY have agreed to resolve this adversary proceeding on the terms set forth below.

NOW THEREFORE, it is agreed by and between the Committee, on the one hand, and MSSH-ILL and MSSH-NY, on the other hand, as follows:

1.      Nothing contained in this stipulation and order will constitute or be deemed an admission by either MSSH-ILL or MSSH-NY of any of the allegations contained in the complaint.

2.      The funds available for distribution to the MSSH Entities and the holders of allowed general unsecured claims against the Debtor (the "**General Unsecured Creditors**") under the terms of this stipulation and order (the "**Available Settlement Cash**") are an amount equal to the value of the existing mortgage lien position of the MSSH Entities on Buildings A, B and C ("**MSSH Mortgage Lien Value**"), <u>plus</u> cash in the Debtor's estate resulting from the liquidation or sale of the Debtor's assets other than the Debtor's real property, <u>less</u> allowed administrative expense claims and allowed unsecured priority claims. The MSSH Mortgage Lien Value will be determined by allocating the proceeds of the sale of the Debtor's real property to S.K.I. Realty, Inc. ("**SKI Realty**") approved by order of this Court dated February 11, 2010 using the 2009/2010 tax assessment of all of the Debtor's real property by New York City for real property tax purposes to Building A, B and C on a percentage basis.

3.      The Available Settlement Cash will be allocated between the MSSH Entities and the General Unsecured Creditors based upon the agreed ratio of $10.5 million ("**Benchmark MSSH Allocation**") and $15.5 million ("**Benchmark General**

**Unsecured Creditors Allocation**") to $26.0 million, which is the current estimate of Available Settlement Cash and which $26.0 million amount the parties refer to as the "**Benchmark Recovery Level**". Actual total amounts to be distributed, beyond the distribution in the MSSH Fixed Secured Claim (defined below) will be determined based upon the Available Settlement Cash, whether greater than, less than or equal to the $26.0 million Benchmark Recovery Level. The allocation percentages will remain constant regardless of the amount of Available Settlement Cash. The allocation percentages to three decimal places are as follows:

      a.    General Unsecured Creditors: 59.615%

      b.    MSSH Entities: 40.385%

4.      The MSSH Entities will have (a) an allowed secured claim in the amount of $6,562,500 (the "**MSSH Fixed Secured Claim** ") and (b) an allowed subordinated secured claim equal to the amount of 40.385% of the Available Settlement Cash, less $6,562,500 (the "**MSSH Subordinated Claim**").

5.      Distributions to the MSSH Entities on account of the MSSH Fixed Secured Claim and the MSSH Subordinated Claim will be made as follows:

      a.  Promptly after the closing of the sale of the Debtor's real property to SKI Realty, the debtor will pay to the MSSH Entities (to MSSH-ILL or MSSH-NY, as directed by the MSSH Entities) $6,562,500 in satisfaction of the MSSH Fixed Secured Claim. This payment will be made when other secured creditors (such as Sun Life Assurance Company of Canada) receive payment from the Debtor of their allowed secured claims as set forth in the order of this Court approving the sale of the Debtor's real property to SKI Realty.

b.    The MSSH Subordinated Claim will receive distributions in an amount equal to 40.385% of Available Settlement Cash, less $6,562,500.

6.    In accordance with the Final DIP Order, the Debtor will continue to make monthly adequate protection payments in an amount equal to the interest due and payable monthly under the MSSH-NY mortgage (approximately $85,000 per month) until all interest on the MSSH-NY mortgage through October 31, 2010 is paid. MSSH-NY agrees that thereafter, the Debtor will cease making such adequate protection payments on the MSSH-NY mortgage. All adequate protection payments made to MSSH-NY in accordance with the Final DIP order are hereby deemed to be valid and unavoidable in accordance with the terms of this stipulation and order.

7.    Nothing in this stipulation and order shall limit the rights of MSSH-IL with respect to the debtor-in-possession ("**DIP**") loan obligations of the Debtor to MSSH-ILL, and nothing herein is intended to modify the DIP loan obligations, including the obligation of the Debtor to pay interest on the DIP loan.

8.    Distributions to General Unsecured Creditors will be made as follows:

a.    The General Unsecured Creditors will receive a distribution in an amount equal to 59.615% of the Available Settlement Cash.

b.    The basis for and entitlement of the General Unsecured Creditors to their distribution under this stipulation and order is (1) the avoidance by the Committee and preservation for the estate under section 551 of the Bankruptcy Code of 59.615% of the MSSH Mortgage Lien Value of the mortgage liens of the MSSH Entities on Buildings A, B and C, with the adjustments described above to arrive at Available Settlement Cash, and/or (2) the subordination and transfer to the estate under section 510(c) of the

Bankruptcy Code of 59.615% of the MSSH Mortgage Lien Value of the mortgage liens of the MSSH Entities on Buildings A, B and C, with the adjustments described above to arrive at Available Settlement Cash.

c.    The actual total amount of distributions to General Unsecured Creditors will be determined based on the normal claims administration process in this bankruptcy case, including holdbacks in connection with any disputed claims and the claims resolution process.

d.    Amounts payable and to be distributed to the MSSH Entities on account of the MSSH Subordinated Claim will not be affected by any increase or decrease in the aggregate pool of allowed general unsecured claims.

9.    The MSSH Entities and the Committee contemplate that a plan of liquidation (the "**Plan**") will be confirmed in this case. The MSSH Entities and the Committee will use their best efforts to negotiate a Plan with the Debtor that will provide, beginning on the effective date of the Plan, for a plan administrator who will wind up the estate, sell or liquidate any remaining estate assets, pursue estate claims and make distributions to holders of allowed administrative expense claims, the MSSH Subordinated Claim, allowed unsecured priority claims and allowed general unsecured claims. In the Plan to be negotiated, the MSSH Entities and the Committee agree to the reasonable funding of a plan administrator to be chosen by the Committee, with the consent of the MSSH Entities not to be unreasonably withheld. In the Plan to be negotiated, whether through an oversight committee structure or other method to be agreed upon and provided for in the Plan, the MSSH Entities and the Committee agree that the MSSH Entities shall maintain a level of participation and oversight of the plan

administrator's activities as is commensurate with their allocated percentage of Available Settlement Cash set forth in paragraph 3 of this stipulation and order. In connection with any Plan, and in addition to the release set forth herein, the Committee agrees to support the inclusion of a Plan injunction preventing any creditors paid under the Plan from pursuing claims against MSSH Entities that arise out of the creditors' dealings with the Debtor.

10.     While the MSSH Entities and the Committee contemplate that a Plan will be confirmed in this case, this stipulation and order is in no way dependent or conditioned on the confirmation of a Plan. This stipulation and order is binding on the parties and the Debtor's estate whether or not a plan is confirmed in this chapter 11 case.

11.     In the event that this chapter 11 case is converted to a chapter 7 case, (a) "allowed administrative expense claims" as used in paragraph 2 of this stipulation and order will include allowed chapter 7 administrative expense claims and (b) this stipulation and order is binding on the parties, the Debtor's estate and any chapter 7 trustee.

12.     The Committee, for itself and as a representative of the Debtor and the Debtor's estate, hereby fully and finally waives, releases, acquits and forever discharges MSSH-ILL, MSSH-NY, any affiliates, predecessors or successors and their respective present and former members, officers, directors, trustees, employees , representatives, agents, attorneys, financial advisors and all other persons acting or purporting to act on their behalf (collectively, the "**MSSH Parties**") from any and all claims, demands, obligations, actions, causes of action, rights or damages which the Committee, the Debtor and/or the Debtor's estate, has against the MSSH Parties, and any of them, whether

known or unknown, foreseen or unforeseen, whether or not asserted in this adversary proceeding arising prior to the date of execution of this stipulation; provided, however, that (a) the Committee reserves all rights with respect to the amount of interest, costs and fees asserted by the MSSH Entities as part of their claims arising after the Petition Date pursuant to the Final DIP Order and related post-petition financing documents and (b) this waiver and release will not affect the rights and claims of the Committee, the General Unsecured Creditors and the Debtor's estate as agreed under the terms of this stipulation and order.

13. The MSSH Parties, and each of them, hereby fully and finally waive, release, acquit and forever discharge the Committee, the members of the Committee (solely with respect to their roles as members of the Committee in this chapter 11 case), the Debtor, the Debtor's estate, any affiliates, predecessors or successors, and their present and former members, officers, directors, trustees and employees, representatives, agents, attorneys, financial advisors and all other persons acting or purporting to act on their behalf from any and all claims, demands, obligations, actions, causes of action, rights or damages which the MSSH Parties, and each of them, have, whether known or unknown, foreseen or unforeseen, whether or not asserted in the adversary proceeding, arising prior to the date of execution of this stipulation; provided, however, that (a) the MSSH Entities will continue to maintain their claims arising after the Petition Date that they maintain pursuant to the Final DIP Order; (b) the MSSH Entities will continue to maintain their rights and remedies as landlord under the Residential Lease Relationships (other than claims for any payments due under the applicable leases from the Debtor which are released in accordance with this stipulation), pending the Debtor's intended

rejection and/or termination of such Residential Lease Relationships under section 365 of the Bankruptcy Code; and (c) this waiver and release will not affect the rights and claims of the MSSH Entities as agreed under the terms of this stipulation and order.

14.     The MSSH Entities hereby withdraw their general objection to the payment of any fees and expenses of the Committee's professionals incurred in the prosecution of this adversary proceeding, and the Final DIP Order is hereby deemed amended and modified to allow for payment of such fees and expenses; provided, however, that the Debtor will not make any borrowings under the Final DIP Order for the payment of such fees and expenses.

15.     This stipulation and order constitutes a full and final compromise of any and all claims, legal or equitable, that the MSSH Entities, and each of them, may have against the Debtor and the Debtor's estates arising prior to the Petition Date. Except for the MSSH Fixed Secured Claim and the MSSH Subordinated Claim, the MSSH Entities will have no pre-petition claims against the Debtor or the Debtor's estate.

16.     By virtue of the Committee's standing in the adversary proceeding as granted in the Final DIP Order and the failure of any other party in interest to assert a challenge prior to the Challenge Deadline, this stipulation and order will be binding on all parties in interest, including the Debtor, the Debtor's estate and the Debtor's successors and assigns, including any trustee hereafter appointed in the Debtor's chapter 11 case or any subsequent chapter 7 case.

17.     This stipulation and order is subject to the approval of the Court and shall be of no force and effect unless and until it is so ordered by the Court and becomes a final and non-appealable order.

18. This stipulation and order constitutes the entire agreement between the Committee and the MSSH Entities with respect to the subject matter hereof and the settlement hereof, and supersedes any and all other prior or contemporaneous written or oral communications between the Committee and the MSSH Entities. The Committee and the MSSH Entities agree that there were no inducements or representations leading to the execution of this stipulation and order , except as contained herein. No other promises or agreements, either express or implied, shall be binding unless signed by the Committee and the MSSH Entities and approved by the Court. This stipulation and order may only be amended in writing by the Committee and the MSSH Entities with the approval of the Court.

19. This stipulation and order may be executed by counsel to the Committee and the MSSH Entities in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. The MSSH Entities, and any representative designated as a signatory hereto, represent and warrant that they have authority to execute this Stipulation on behalf of the MSSH Parties, as defined herein. A signature transmitted by facsimile or e-mail shall be deemed an original, valid and binding signature to this stipulation and order.

20. . Upon this stipulation and order becoming final and non-appealable, this adversary proceeding will be deemed dismissed with prejudice and the Committee shall promptly provide the clerk of this Court with any necessary filings to dismiss this adversary proceeding

21.     The Court shall retain jurisdiction to determine any dispute by and between any party in interest in this case concerning this stipulation and order, including any action to interpret or enforce the terms and provisions contained herein.

[SIGNATURE PAGE FOLLOWS]

LEGAL02/32122094v2

Dated: September 22, 2010
New York, New York

**ALSTON & BIRD LLP**


By: /s/ Martin G. Bunin
Martin G. Bunin
Karl Geercken
Tiffany A. Buxton
Catherine R. Fenoglio
90 Park Avenue
New York, NY 10016
(212) 210-9400

*Counsel for the Official Committee of
Unsecured Creditors*


**KLESTADT & WINTERS LLP**


By: /s/ Sean Southard
Tracy Klestadt
Sean Southard
Brendan M. Scott
292 Madison Avenue, 17th floor
New York, NY 10017
(212) 972-3000

*Counsel for the Missionary Sisters of the
Sacred Heart, an Illinois not-for-profit
corporation, and Missionary Sisters of the
Sacred Heart, a New York not-for-profit
corporation*

- 14 -

Acknowledged and Agreed To:

TOGUT, SEGAL & SEGAL LLP

By: /s/ Frank A. Oswald
      Frank A. Oswald
      Howard P. Magaliff
      One Penn Plaza, Suite 3335
      New York, New York 10019
      (212) 594-5000

      *Counsel for Cabrini Medical Center*

SO ORDERED this ___ day
of _____, 2010

_____
HONORABLE ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKURPTCY JUDGE